Filed 3/4/21 P. v. Whitson CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DARRELL WHITSON,<br><br>    Defendant and Appellant. | B305714<br><br>(Los Angeles County Super. Ct. No. TA013892) |

APPEAL from an order of the Superior Court of Los Angeles County, Kelvin D. Filer, Judge. Affirmed in part, reversed and remanded in part.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey,

Senior Assistant Attorney General, Idan Ivri and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

In the early 1990's, defendant and appellant Darrell Whitson was convicted of first degree murder, three counts of willful, premeditated, and deliberate attempted murder, and conspiracy to murder, in a drive-by shooting case. Whitson petitioned for resentencing as to all five counts pursuant to Senate Bill No. 1437 (Senate Bill 1437) and Penal Code section 1170.95,[1] which provide for vacatur of a murder conviction obtained under the natural and probable consequences doctrine or the felony murder theory of liability, if the defendant was not the actual killer, did not intend to kill, and was not a major participant in an underlying felony who acted with reckless disregard for human life. (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.) He appeals the trial court's postjudgment order denying that petition.

Whitson contends that because the jury was instructed that he could be found guilty on a natural and probable consequences theory of liability in all five counts, and could have found him guilty on that theory, the trial court erred in finding he was prima facie ineligible for relief as matter of law.

———————————————

[1] All further statutory references are to the Penal Code unless otherwise indicated.

We affirm in part, and reverse and remand in part. Senate Bill 1437 does not apply to attempted murder and conspiracy to murder convictions. We therefore affirm the trial court's order denying the petition with respect to the convictions in counts 2, 3, 4, and 5. We must reverse and remand with respect to the murder conviction in count 1. If the jury had been properly instructed, its finding that Whitson was guilty of conspiracy to murder would have precluded relief under section 1170.95, but in this case the trial court struck the portion of CALJIC No. 6.10 that would have required the jury to find that Whitson intended to commit murder before it could find him guilty of conspiracy to murder.[2] Absent a jury finding that Whitson intended to kill, he is not ineligible as a matter of law for resentencing with respect to the murder count.

_____

[2] The reporter's transcript is not included in the record on appeal, so we cannot ascertain why the trial court modified CALJIC No. 610.

# FACTS AND PROCEDURAL HISTORY[3]

### *The Crimes*

On July 7, 1991, Whitson was driving a blue Jeep. 15-year-old Vernon Cox, who testified for the prosecution at trial under a grant of immunity, was in the passenger seat.[4] Whitson met codefendant Shon Ramone Yokely. The two were members of a Crips gang, a rival to the Bloods gang to which one of the victims, Albert Jones, belonged. (*Yokely, supra*, B074241, p. 3.) Whitson told Yokely he was going to drive around looking for Bloods and invited him to come along. Yokely agreed, but first ran into a nearby residence. When he returned there was something in his waistband. (*Id.* at p. 6.) Whitson drove into Bloods territory, and slowed in front of a residence where Albert, his brother Paul, his sister Katie, and Katie's daughter Mitchshale were standing. (*Id.* at pp. 3, 7.) Yokely, who was sitting in the back seat on the driver's side, opened fire on the family. He shot Albert in the shoulder and ear, Katie in the leg, Paul in the leg, and

---

[3] We take judicial notice of this court's prior unpublished opinion in *People v. Yokely et al.* (Jan. 17, 1995, B074241) (*Yokely*), from which the facts are drawn. The opinion spells codefendant's name "Yokely" in the caption but "Yokley" in the body of the opinion.

[4] Cox was intoxicated and had been vomiting just before the shooting.

14-month-old Mitchshale in the head, killing her. The Jeep sped away. (*Id*. at p. 3.)

"Whitson was confirmed as the driver of the Jeep on that day by several other witnesses. He was also linked to the car by the presence of a .25-caliber bullet, which could have been fired from the .25-caliber automatic which he possessed on the date of his arrest. Whitson also admitted to being the driver, although he attempted to exculpate himself from the shootings." (*Yokely*, *supra*, B074241, p. 4.)

### *The Trial*

As relevant here, the jury was instructed regarding direct liability as an aider and abettor (CALJIC No. 3.01), aider and abettor liability for murder as natural and probable consequence of assault with a firearm (CALJIC No. 3.02), conspiracy to murder and overt acts, as well as liability for the natural and probable consequences of acts in furtherance of conspiracy to murder (CALJIC Nos. 6.10 & 6.11), premeditation and deliberation (CALJIC No. 8.20), and transferred intent (CALJIC 8.65).

The jury found Whitson guilty of first degree murder (§ 187, subd. (a) [count 1]), three counts of willful, premeditated, and deliberate attempted murder (§§ 664/187 [counts 2–4]), and conspiracy to commit murder (§ 182, subd. (1) [count 5]). It further found that a principal used a firearm in commission of the crimes in counts 1 through 4, pursuant to section 12022, subdivision (a)(1). Whitson was

sentenced to 25 years to life in count 1, and three consecutive life sentences with the possibility of parole in counts 2, 3, and 4. The sentence in count 5 was stayed pursuant to section 654.

## *Direct Appeal*

On appeal before another panel of this court, Whitson argued that there was insufficient evidence to support the finding that he was either a co-conspirator or an aider and abettor of the shooting (*Yokely*, *supra*, B074241, p. 4), that certain weapon evidence was erroneously admitted, and that the trial court erred in imposing firearm enhancements under sections 12022.5 and 12022.55 (*id*. at p. 2). With respect to Whitson's contention that the evidence was insufficient to support his convictions, the appellate court concluded "[t]he evidence in this case was not only substantial; it was overwhelming." (*Id*. at p. 4.) The court reduced Whitson's presentence credit, but otherwise affirmed the judgment. (*Id*. at p. 10.)

## *Petition for Resentencing*

On March 26, 2019, Whitson filed a petition for resentencing under section 1170.95. He utilized a standardized form, and indicated that he was not the killer, did not act with intent to kill, and was not a major participant in the underlying felony who acted with reckless

6

indifference to human life. He did not check the box indicating that he was convicted of second degree murder under the natural and probable consequences doctrine. Whitson requested that counsel be appointed to him.

The People filed a response on September 20, 2019, contending that Senate Bill 1437 was unconstitutional, but that, even if the court were to find the legislation constitutional, Whitson was ineligible for relief because: (1) in finding Whitson guilty of conspiracy to commit murder the jury necessarily found that he harbored an intent to kill; (2) in finding Whitson guilty of the three attempted murders the jury necessarily found that he harbored an intent to kill; and (3) the jury's findings that Whitson intended to kill the three attempted murder victims transferred to the murder victim.

Whitson's appointed counsel filed a reply pursuant to section 1170.95 on February 20, 2020, arguing for vacatur of his convictions for murder, attempted murder, and conspiracy to murder. The reply argued that: (1) the People's constitutional arguments were "highly disfavored" and without merit, (2) the People failed to present facts to rebut the presumption that Whitson was eligible for relief, (3) Senate Bill 1437 eliminated aider and abettor liability for murder under the natural and probable consequences doctrine, and (4) attempted murder requires independent proof of an aider and abettor's specific intent to kill, which the jury did not find in this case.

7

On March 4, 2020, the trial court denied the petition after reviewing the pleadings, a "dummy file" created by the clerk's office in chambers, and "numerous writs and motions . . . unrelated to the issues" that codefendant Yokely had filed. The court did not issue an order to show cause and hold a hearing, and neither the parties nor counsel appeared.

The court ruled that Whitson failed to establish a prima facie basis for relief, and denied the petition as a matter of law, stating:

"The case reflected a classic drive-by shooting that was a particularly vogue activity for gangs at that time. Petitioner was a very active gang member with the 118th Street East Coast Crips. The Crips were a bitter rival of the Blood Gangs. Petitioner was the driver of the vehicle and stopped his car to tell Yokely, the shooter, that they were on their way to roll around to see some Bloods. Yokely said he wanted to come along. Yokely went to a house. Petitioner waited for Yokely. And when he returned to the car, he, Yokely, was holding something in his waistband. The clear and reasonable inference from these circumstances is that Yokely was carrying a gun, and they were going to drive around hunting for Blood gang members to shoot. This was more than mere involvement in the shooting.

"Petitioner was literally the driver of this expedition. Petitioner came up with the idea. His driving pattern was very deliberate. He went to the rival gang's territory and

8

slowed down the vehicle so Yokely could shoot. Then he drove off to flee the scene of the shooting.

"Furthermore respondent's point is well taken that we should respect the fact-finding of the jury. Petitioner was also convicted of three counts of attempted murder, again reflecting their finding that he had the specific intent to kill.

"In short, petitioner was clearly a major participant in the killing and acted with reckless indifference to human life."

Whitson timely appealed.

## DISCUSSION

"Through section 1170.95, Senate Bill 1437 created a petitioning process by which a defendant convicted of murder under a felony murder [or natural and probable consequences] theory of liability could petition to have his conviction vacated and be resentenced. Section 1170.95 initially requires a court to determine whether a petitioner has made a prima facie showing that he or she falls within the provisions of the statute as set forth in subdivision (a), including that '(1) [a] complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[,] [¶] (2) [t]he petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first

9

degree or second degree murder[, and] [¶] (3) [t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' (See § 1170.95, subd. (c); *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327, review granted Mar. 18, 2020[, S260493].) If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may deny the petition. (*Verdugo*, at p. 330.) If, however, a determination of eligibility requires an assessment of the evidence concerning the commission of the petitioner's offense, the trial court must appoint counsel and permit the filing of the submissions contemplated by section 1170.95. (*Verdugo*, at p. 332; [*People v.*] *Lewis* [(2020)] 43 Cal.App.5th [1128,] 1140, rev. granted [Mar. 18, 2020, S260598].)" (*People v. Smith* (2020) 49 Cal.App.5th 85, 92 (*Smith*), review granted July 22, 2020, S262835.)

Whitson contends that because the record establishes that the jury was instructed on the natural and probable consequences theory of liability for murder, the trial court's summary denial of his petition was error. He argues that the court erred by engaging in fact-finding and relying on Yokely's filings, which the court stated were "unrelated to the issues." He asserts that the trial court was required to issue an order to show cause, conduct a hearing, and allow the parties to present evidence under section 1170.95, subdivision (c).

***Attempted Murder Convictions & Conspiracy to
Murder Conviction (Counts 2-4)***

With respect to Whitson's convictions for attempted murder, Senate Bill 1437, including the petitioning procedure codified in section 1170.95, authorizes relief only for defendants convicted of murder, not attempted murder, and that limitation does not contravene constitutional equal protection guarantees.  (*People v. Love* (2020) 55 Cal.App.5th 273, 279, review granted Dec. 16, 2020, S265445; *People v. Alaybue* (2020) 51 Cal.App.5th 207, 222–225; *People v. Dennis* (2020) 47 Cal.App.5th 838, 841, review granted July 29, 2020, S262184; *People v. Munoz* (2019) 39 Cal.App.5th 738, 753–769, review granted Nov. 26, 2019, S258234; *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1103–1112, review granted Nov. 13, 2019, S258175.)

As with attempted murder, the Legislature expressed no intention that section 1170.95's provisions be applicable to convictions for conspiracy to murder.  We see no reason to distinguish between attempted murder and conspiracy to murder in this context, and Whitson offers none.  We conclude that Whitson is ineligible for vacatur of his conviction for conspiracy to murder pursuant to section 1170.95.

*Murder Conviction (Count 1)*

With respect to Whitson's murder conviction, the People concede, and we agree, that the trial court was prohibited from engaging in fact-finding and weighing facts at the eligibility stage of proceedings. (*Smith*, *supra*, 49 Cal.App.5th at pp. 95–96.) Instead, the People argue that Whitson's petition fails as a matter of law based on jury findings at his trial. Specifically, the People contend that either Whitson's conviction for conspiracy to murder, or his three convictions for attempted murder coupled with the instructions regarding transferred intent, establish that the jury found he intended to kill Mitchshale, and could still be convicted of murder after the amendments to sections 188 and 189.

## **The Conspiracy to Murder Conviction as a Means of Establishing Intent to Murder**

The People first argue that Whitson's conspiracy to murder conviction precludes eligibility for relief for his murder conviction, because the jury was required to find that Whitson possessed the intent to murder to find him guilty of conspiracy to murder.

"[C]onspiracy is a specific intent crime requiring an intent to agree or conspire, and a further intent to commit the target crime, here murder, the object of the conspiracy." (*People v. Swain* (1996) 12 Cal.4th 593, 602.) In this case

however, the jury was not instructed that, in addition to finding Whitson intended to agree to conspire to commit murder, it must also find he intended to commit murder.[5]

---

[5] As relevant here, a modified version of CALJIC No. 6.10 was given that deleted a phrase from the form instruction that states, "and with the further specific intent to commit that crime." (CALJIC No. 6.10.) The instruction given by the trial court is set forth below, with our insertion of the marker "*[***]*" to show where the phrase deleted by the trial court would typically be included in the form instruction:

"A conspiracy is an agreement entered into between two or more persons with the specific intent to agree to commit the public offense of murder *[***]* followed by an overt act committed in this state by one [or more] of the parties for the purpose of accomplishing the object of the agreement. Conspiracy is a crime.

"In order to find a defendant guilty of conspiracy, in addition to proof of the unlawful agreement and specific intent, there must be proof of the commission of at least one of the overt acts alleged in the [information]. It is not necessary to the guilt of any particular defendant that defendant personally committed the overt act, if [he] was one of the conspirators when such an act was committed.

"The term 'overt act' means any step taken or act committed by one [or more] of the conspirators which goes beyond mere planning or agreement to commit a public offense and which step or act is done in furtherance of the accomplishment of the object of the conspiracy.

"The be an 'overt act', the step taken or act committed need not, in and of itself, constitute the crime or even an attempt to commit the crime which is the ultimate object of

Had the jury been fully instructed with respect to conspiracy to murder, including the portion of the form instruction deleted, its guilty verdict would have encompassed the finding that Whitson intended to kill. That finding would have precluded relief for the murder conviction, as Whitson could still be convicted under section

---

the conspiracy. Nor is it required that such a step or act, in and of itself, be a criminal or an unlawful act."

The trial court also instructed the jury under CALJIC No. 6.11:

"Each member of a criminal conspiracy is liable for each act and bound by each declaration of every other member of the conspiracy if such act or such declaration is in furtherance of the object of the conspiracy.

"The act of one conspirator pursuant to or in furtherance of the common design of the conspiracy is the act of all conspirators.

"A member of a conspiracy is not only guilty of the particular crime that to [his] knowledge [his] confederates agreed to and did commit, but is also liable for the natural and probable consequences of any [crime] [act] of a co-conspirator to further the object of the conspiracy, even though such [crime] [act] was not intended as a part of the agreed upon objective and even though [he] was not present at the time of the commission of such [crime] [act].

"You must determine whether the defendant is guilty as a member of a conspiracy to commit the originally agreed upon crime or crimes, and, if so, whether the crime alleged [in Count[s] one, two, three & four] was perpetuated by [a] coconspirator[s] in furtherance of such conspiracy and was a natural and probable consequence of the agreed upon criminal objective of such conspiracy."

14

188, following the amendments effected by Senate Bill 1437. (See § 188, subd. (a)(3) [imposing liability for murder when the defendant acts with malice aforethought].) However, for reasons unknown to us, the trial court struck the language in the pattern instruction for CALJIC No. 6.10 that would have instructed the jury that it was required to find that Whitson intended to commit murder.

Nor are we persuaded by the People's argument that the jury's "true" finding against Whitson on overt act 5—charging that "[o]n or about July 7, 1991, the defendants and others shot and killed 14 month old Mitchshalae [*sic*] Davis"—constitutes a jury finding that Whitson intended to kill the victim. The jury was instructed that an overt act is any step taken beyond mere agreement and planning toward committing murder. Significantly, it was further instructed that, "[t]o be an 'overt act', the step taken or act committed need not, in and of itself, constitute the crime or even an attempt to commit the crime which is the ultimate object of the conspiracy." Nothing in these instructions suggest the jury's true finding equates to a finding that Whitson possessed the intent to murder.

Absent an express finding by the jury of intent to commit murder, Whitson is not barred from relief on that basis as a matter of law.[6]

---

[6] We reject Whitson's argument that Mitchshale, or any other individual, had to be named as the individual who the defendants intended to kill when they conspired. We agree with the Ninth Circuit that, under California law,

## Attempted Murder Convictions as a Means of Establishing Intent to Murder

The People argue that the three attempted murder convictions required the jury to find that Whitson harbored the specific intent to kill Albert, Paul, and Katie, because the instruction regarding liability for a crime as a natural and probable consequence of assault with a firearm was expressly limited to the murder count.[7] The People reason

---

conspiracy to commit murder may be based on an agreement to kill "a human being" who is not specifically identified. (*United States v. Wicker* (9th Cir. 2005) 151 F.App'x 563, 565.)

[7] The trial court instructed the jury under CALJIC No. 3.02: "One who aids and abets [another] in the commission of a crime [or crimes] is not only guilty of [that crime] [those crimes], but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime[s] originally aided and abetted.

"[T]he defendant is guilty of the crime of murder, [as charged in Count[s] 1,] if you are satisfied beyond a reasonable doubt that:

"(1) The lesser related crime of assault with a firearm was committed,

"(2) The defendant aided and abetted such crime[s],

"(3) A co-principal in such crime committed the lesser related crime of assault with a firearm, and

"(4) The crime of murder was a natural and probable consequence of the commission of the crime[s] of assault with a firearm."

that, because the jury was properly instructed regarding transferred intent under CALJIC No. 8.65 that "[w]hen one attempts to kill a certain person, but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed, had been killed," the jury would have, by necessity, found that the intent to kill the three other victims had been transferred to Mitchshale, and could still be found guilty under the amendments to sections 188 and 189.

The problem with the People's argument again lies with the faulty conspiracy to murder instruction, which allowed the jury to find that Whitson was guilty of any crime that was a "natural and probable consequence[] of any [crime] [act] [other than murder] of a co-conspirator to further the object of the conspiracy, even though that [crime] [act] was not intended as a part of the agreed upon objective" (CALJIC No. 6.11), without first finding that Whitson intended to commit murder.

With respect to attempted murder, the trial court instructed the jury pursuant to CALJIC No. 8.66 that it need only find: "1.  A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2.  The person committing such act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."  The evidence presented at trial was that Yokely was the shooter and Whitson was the driver, so under the instructions, if Yokely, who committed the

17

shooting, also intended to kill, Whitson could be liable for the attempted murders that were a natural and probable consequence of the conspiracy, which also did not require that Whitson possessed the intent to kill.  If the jury found Whitson guilty of attempted murder under this theory that did not require finding Whitson intended to kill the attempted murder victims, there was no intent to transfer to the killing of Mitchshale.  Because we cannot rule out the possibility that Whitson was found guilty on this theory, he is not ineligible as a matter of law on this basis, either.

In light of the instructions given and the jury's verdicts, at this stage in the proceedings we are forced to accept the highly unlikely possibility that the jury, who found that Whitson intended to agree to murder a Blood, picked up a fellow Crips gang member, drove into Blood's territory, and slowed his vehicle in front of a residence where a Blood gang member was standing with his family while his compatriot in the back seat fired multiple shots, only intended to aid and abet the shooter in an assault with a firearm.  Although such a scenario strains credulity, in adherence to the procedures set forth in section 1170.95, we reverse and remand to the trial court for further proceedings as to the murder conviction in count 1.

## DISPOSITION

The trial court's order denying Whitson's resentencing petition is affirmed as to his convictions for attempted murder in counts 2, 3, and 4, and his conviction for conspiracy to murder in count 5. As to the murder conviction in count 1, we reverse and remand to the trial court for further proceedings.


MOOR, J.

We concur:



RUBIN, P. J.



KIM, J.